IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEREMY PINSON (#16267-064), | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:15-cv-2190-M-BN |
| JOSE SANTANA, ET AL., | § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
<u>**UNITED STATES MAGISTRATE JUDGE**</u>

This case has been referred to the undersigned United States magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Barbara M.G. Lynn. The undersigned issues the following findings of fact, conclusions of law, and recommendation that the Court should summarily dismiss this action without prejudice pursuant to 28 U.S.C. § 1915(g) unless Plaintiff Jeremy Pinson pays the full filing fee of $400.00 within the time for filing objections to this recommendation or by some other deadline established by the Court.

**Background**

On June 30, 2015, the Court received this *Bivens* action brought by Plaintiff – who is in the custody of the Bureau of Prisons ("BOP"), at Florence – High USP ("Florence"), located in Colorado – against the BOP and Jose Santana, stated to be the Chief of BOP's Designation and Sentence Computation Center ("DSCC"), in Grand

Prairie, Texas, located in the Dallas Division of the Northern District of Texas. Plaintiff identifies herself as "a transgender federal prisoner" and claims that she has been diagnosed with Gender Dysphoria. She alleges that by designating her to Florence – which she claims has no history of treating Gender Dysphoria and at which she claims are housed inmates who have been hostile to her – Defendants have violated her constitutional rights under the Eighth Amendment. Plaintiff seeks an injunction to compel "BOP to follow WPATH Standards of Care and Protect Plaintiff by transferring her to FMC Devens or other suitable facility" and a "Declaratory Judgment that defendants actions/omissions violated the 8th Amendment." Dkt. No. 3 at 3.

Specifically as to alleged hostility upon transfer to Florence, Plaintiff claims that, "[s]hortly after [her] arrival inmates seized on [her] effeminate manner to call her 'bitch' 'punk' 'faggot' and other derogatory terms and staff did nothing to protect her from verbal abuse." Dkt. No. 3 at 2. Further, "[i]n May 2015 inmates began forcing plaintiff under threat of being stabbed to hold their shanks, drugs and other contraband in her cell. These inmates have physical contact out of the cell with her daily. One has threatened rape." *Id.* at 3.

On July 2, 2015, after concluding that the "imminent danger of serious physical injury" exception did not apply, the undersigned recommended that the Court should summarily dismiss this action without prejudice pursuant to 28 U.S.C. § 1915(g) unless Plaintiff pays the full filing fee of $400.00 within an established time. *See* Dkt. No. 4. The Court accepted this recommendation, and entered judgment, on July 14, 2015. *See* Dkt. Nos. 5 & 6.

On July 21, 2015, the Court received Plaintiff's objections to that recommendation, *see* Dkt. No. 7, and the Court has now set aside its previous order and judgment and remanded this case to the undersigned to consider Plaintiff's objections as they relate to imminent danger, *see* Dkt. No. 9.

As to imminent danger, Plaintiff states in her objections:

> She is harassed daily by a prisoner Christopher Coates who is a violent rapist who upon information has Human Immunodeficiency Virus and also has a prison shank. Coates harasses plaintiff daily demanding fellatio and has physically grabbed plaintiff twice trying to pin her down threatening anal rape. In one such encounter last week plaintiff was cut. One other occasion Coates so violently accosted plaintiff he dislocated several fingers causing enormous pain. Staff witness Coates['s] behavior but the facility Captain has instructed them not to discipline Coates because he is his paid informant.

Dkt. No. 7 at 1-2.

The undersigned, having considered Plaintiff's objections, again concludes that this action should be summarily dismissed without prejudice pursuant to 28 U.S.C. § 1915(g) unless Plaintiff pays the full filing fee of $400.00 within the time for filing objections to this recommendation or by some other deadline established by the Court.

**Legal Standards**

A prisoner may not proceed *in forma pauperis* if, while incarcerated or detained in any facility, he or she has filed three or more civil actions or appeals in federal court that were dismissed as frivolous or malicious or for failure to state a claim. *See* 28 U.S.C. § 1915(g). The only exception to the "three strikes" bar is when the prisoner is "under imminent danger of serious physical injury." *Id*. In order to meet the "imminent danger" requirement of section 1915(g), "the 'threat or prison condition [must be] real

-3-

and proximate.'" *Valdez v. Bush,* No. 3:08-cv-1481-N, 2008 WL 4710808, at *1 (N.D. Tex. Oct. 24, 2008) (quoting *Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir. 2003)). "Allegations of past harm do not suffice – the harm must be imminent or occurring at the time the complaint is filed." *Id.* "Moreover, the prisoner must allege specific facts showing that he is under imminent danger of serious physical injury." *Id.* "'General allegations that are not grounded in specific facts which indicate that serious physical injury is imminent are not sufficient to invoke the exception to § 1915(g).'" *Id.* (quoting *Niebla v. Walton Corr. Inst.,* No. 3:06-cv-275-LAC-EMT, 2006 WL 2051307, at *2 (N.D. Fla. July 20, 2006)).

## Analysis

Plaintiff is a frequent litigant in federal courts throughout the country. *See, e.g.*, *Pinson v. Frisk*, No. 13-cv-05502-VC, 2015 WL 738253, at *2 (N.D. Cal. Feb. 18, 2015) ("The plaintiffs[, including Pinson,] do not dispute that they each have at least three strikes within the meaning of § 1915(g). Nor could they, in light of the Court's [previous order] citing the findings of other courts that each plaintiff has filed three or more frivolous lawsuits that have barred them from proceeding IFP unless they satisfy the imminent danger exception." (citing *Pinson v. Samuels*, 761 F.3d 1, 2-3 (D.C. Cir. 2014) ("Because Pinson has run afoul of the Prison Litigation Reform Act's three-strikes provision and has failed to demonstrate that he qualifies for the imminent danger exception, we deny his motion to proceed *in forma pauperis*."); *Pinson v. Armijo*, No. 13-cv-01567-BNB, 2014 WL 1034992, at *1 (D. Col. Mar. 18, 2014) ("Mr. Pinson, on three or more prior occasions, has brought an action that was dismissed on the grounds

-4-

that it was frivolous.")) (some citations omitted)).

Plaintiff's "litigation history shows a pattern of abusive filings in federal courts. As one district court stated[, in March 2014]:

> Mr. Pinson is no stranger to this Court and to at least nineteen other federal district courts. Since November 2007, Mr. Pinson has filed forty-three cases in this Court; and since September 2005, he has filed at least 136 cases in various other federal district courts, along with 64 appeals in seven different circuits. Since June 13, 2013, when he filed this case, Mr. Pinson has initiated in this Court five additional prisoner complaints and seven habeas actions.... Also, since June 13, 2013, Mr. Pinson has initiated twelve actions in several other federal district courts.... Mr. Pinson's propensity to engage in abusive litigation conduct and to present unbelievable claims was established in Case No. 13-cv-0134-RM-BNB, when Judge Moore found adequate support for this characterization based on the frequency of Mr. Pinson's filings and the testimony at the hearing before Magistrate Judge Boland on January 14, 2014.

*Pinson v. Frisk*, 2015 WL 738253, at *5 (quoting *Pinson v. Armijo*, 2014 WL 1034992 at *2-*3).

Plaintiff's current filing undoubtedly falls under the three-strikes provision. Under Section 1915(g), therefore, Plaintiff may not proceed without the prepayment of fees unless she shows that she is subject to imminent danger of serious physical injury. Plaintiff, through her current complaint and objections to the previous recommendation, fails to make that showing.

As the Court observed in a similar action brought by one of Plaintiff's frequent co-litigants, which analysis is equally applicable here,

> Plaintiff's allegations contain reference to the danger posed by [others] incarcerated with [her] at the Administrative Maximum United States Penitentiary in Florence, Colorado. *See* Dkt. No. 3 at [2-3]. However, none of the claims that [she] is under imminent danger of serious physical

> injury is directly attributable to the conduct of the Defendants in this matter or can be immediately redressed by this lawsuit. The [individual] Defendant[] in the Northern District of Texas [is an] employee[] of the Bureau of Prisons central administrative office responsible for inmate placement. Unlike, for example, at least certain personnel at USP Florence, the Defendants do not have direct control over Plaintiff's safety at the USP Florence unit. Plaintiff therefore has failed to show a sufficient nexus between the alleged danger and the asserted civil rights violation to overcome the three-strikes bar.

*Stine v. Fed. Bureau of Prisons Designation & Sentence Computation Unit*, No. 3:13-cv-4253-B, 2013 WL 6640391, at *2 (N.D. Tex. Dec. 17, 2013) (citing *Emmett v. Julye*, No. H-13-2693, 2013 WL 5537251, at *2 (S.D. Tex. Oct. 4, 2013) (in turn citing *Pettus v. Morgenthau*, 554 F.3d 293, 297-298 (2d Cir. 2009) ("the complaint of a three-strikes litigant must reveal a nexus between the imminent danger it alleges and the claims it asserts, in order for the litigant to qualify for the 'imminent danger' exception of § 1915(g)"))); *cf. Clay v. Doctor Zae Young Zeon*, No. H-14-0057, 2014 WL 204241, at *1 (S.D. Tex. Jan. 17, 2014) ("The court will ... determine whether Clay is in imminent danger of serious physical harm attributable to acts or omissions by custodial officials and whether the danger is attributable to the facts alleged in the complaint." (citing *Pettus*, 554 F.3d at 297-98)).

The Court's nexus analysis in *Stine* was affirmed by the United States Court of Appeals for the Fifth Circuit. *See Stine v. Fed. Bureau of Prisons Designation & Sentence Computation Unit*, 571 F. App'x 352, 354 (5th Cir. 2014) (per curiam) ("Stine has also failed to plausibly plead any connection between the alleged imminent danger in Colorado and his claims against the BOP defendants in Texas, because they have no control of conditions at [his BOP facility] and because Stine has no right to be

assigned to any particular prison." (citing *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976))); *see also Waters v. United States*, 331 F. App'x 278, 280 (5th Cir. 2009) (per curiam) ("The district court correctly determined that Waters' claim that the BOP lacked discretion to determine that he would serve all, or part of, his federal sentence in the Louisiana state prison system did not implicate a constitutionally protected right." (citing *Olim*, 461 U.S. at 246-47)); *accord Fuselier v. Mancuso*, 354 F. App'x 49, 49 (5th Cir. 2009) (per curiam).

Plaintiff's more detailed claims as to imminent danger expressed in her objections further illustrate that there is no "connection between the alleged imminent danger in Colorado and [her] claims against the BOP defendants in Texas." *Stine*, 571 F. App'x at 354.

Her claims against the BOP defendants concerns the BOP's designation of Florence as her place of confinement. Indeed, her requested relief includes that the Court order BOP to transfer her to another facility. As one district court in this circuit has comprehensively explained,

> even if [a] plaintiff could show that his classification status was in error, he still [would] fail[] to state a constitutional violation because, in general, inmates do not have a protected property or liberty interest in their custodial classifications. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (citation omitted); *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir. 1988) (citation omitted). The Constitution "does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkerson v. Austin*, 545 U.S. 209, 221-22 (2005); *see also Meachum v. Fano*, 427 U.S. 215, 225 (1976) (no liberty interest arising from due process clause itself in transfer from low to maximum security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose").

> A liberty interest arises, if at all, from state policies or law, subject to the limitations set forth in *Sandin v. Conner*, 515 U.S. 472 (1995). In *Sandin*, the Supreme Court held that the due process clause does not protect every change in the conditions of confinement having a substantial adverse effect upon a state prisoner, but only those that impose an atypical and significant hardship in relation to the ordinary incident of prison life. In general, those conditions are ones that affect the quantity of time, rather than the quality of time, served by a prisoner. *Id.* at 484.
>
> The BOP may direct confinement of a prisoner in any available facility and may transfer a prisoner from one facility to another at any time. *See* 18 U.S.C. § 3621(b). Federal prisoners generally have no right to placement in a particular penal institution. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moore v. U.S. Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam).
>
> Moreover, the classification of inmates is a matter within the discretion of prison officials. *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990). Thus, absent an abuse of discretion, a federal court may not interfere with administrative determinations regarding custodial classifications of inmates. *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998). The federal courts do not supervise the day-to-day administration of prisons. *Meachum*, 427 U.S. at 228-29.

*Jebril v. Joslin*, C.A. No. C-07-436, 2008 WL 416240, at *5 (S.D. Tex. Feb. 12, 2008) (some citations modified); *see also Jones v. Bureau of Prisons*, Nos. 1:04-cv-35, 1:04-cv-392, 2007 WL 965746, at *5 (E.D. Tex. Mar. 27, 2007) ("Federal courts will not interfere with classification decisions except in extreme circumstances." (citing *Jackson v. Cain*, 864 F.2d 1235 (5th Cir. 1989); *Young v. Wainwright*, 449 F.2d 338 (5th Cir. 1971)).

Plaintiff's allegations of imminent danger, however, concern the conditions of her confinement at Florence; specifically, her claim that employees at that facility are failing to protect her from another inmate. As the Fifth Circuit explained in *Stine*, in addition to not having a constitutional right to a particular prison, which classification

-8-

of federal prisoners is the work of the BOP defendants in Texas, "the BOP defendants in Texas" also "have no control of conditions at [Florence]." 571 F. App'x at 354.

In finding that there must be "some connection" between the imminent danger of serious physical harm that Plaintiff has alleged and the claims that she has made against the defendants she has sued, the Court is not, as Plaintiff claims in her objections, "condon[ing] prison rape because she is economically incapable of paying a filing fee." Dkt. No. 7 at 3. If Plaintiff is in fear of her safety at Florence, she may certainly file an action in the District of Colorado against defendants charged with protecting her at that facility and move to proceed *in forma pauperis*, providing that court the same imminent danger allegations that she makes in this lawsuit.

But Plaintiff may not use imminent danger allegations as a means to avoid the three-strike bar in a lawsuit brought against defendants who have no "connection [to] the alleged imminent danger." *Stine*, 571 F. App'x at 354; *cf. Scott v. Taylor*, 405 F.3d 1251, 1259 (11th Cir. 2005) (Jordan, J., concurring) ("Standing ... concerns the congruence or fit between the plaintiff and the defendants.... Thus, in a suit against state officials for injunctive relief, a plaintiff does not have Article III standing with respect to those officials who are powerless to remedy the alleged injury.").

Therefore, Plaintiff should be barred from proceeding *in forma pauperis* under Section 1915(g). *See Adepegba v. Hammons,* 103 F.3d 383, 388 (5th Cir. 1996).

## Recommendation

The Court should summarily dismiss this action without prejudice pursuant to 28 U.S.C. § 1915(g) unless Plaintiff pays the full filing fee of $400.00 within the time

for filing objections to this recommendation or by some other deadline established by the Court.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 6, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE